## Farmers Bank & Trust Co. v. Nunn's Adm'r et al.

(Decided May 19, 1936.)

A. C. MOORE and JOHN A. MOORE and CHARLES FERGUSON for appellant.

NUNN & WALLER and C. C. GRASSHAM for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Farmers Bank & Trust Company is appealing from a judgment of the Crittenden circuit court sustaining a demurrer to and upon its failure to further plead dismissing its petition in an action against the stockholders of the Bank of Marion, formerly engaged in banking business at Marion, Ky.

As appears from the allegations of the petition, as amended, the Bank of Marion had for many years prior to October 11, 1930, been engaged in banking business, but on that date it was by agreement taken over by and merged with appellant. At the time of the consolidation and merger, the Bank of Marion was in bad financial condition and about to be taken over by the state banking department for the purpose of liquidation. In order to prevent such liquidation, its officers and stockholders submitted to appellant a proposal for the consolidation and merger of the two

banks. The proposal setting forth the terms and conditions of consolidation or merger was submitted in writing, signed by all the stockholders of the Marion Bank, and was accepted in writing and signed by all the members of the board of directors of appellant bank.

Under the terms of the agreement, it was provided that the capital stock of appellant would be increased to $50,000 with a surplus of $50,000, to be divided into 500 shares of a par value of $100 each, 300 shares to be apportioned among stockholders of the Farmers Bank & Trust Company in proportion to the amount of stock held by each stockholder, and 200 shares to be apportioned in like manner among stockholders of the Marion Bank. The stockholders of the Farmers Bank & Trust Company guaranteed its net assets over and above its liabilities to be of a value of $60,000, and the stockholders of the Marion Bank guaranteed its assets over and above its liabilities to be of a value of $40,000. It was further agreed that the shares of stock allotted to stockholders of the Marion Bank should be issued and delivered to a board of trustees for its stockholders consisting of three such stockholders designated therein; that the stock be held by the trustees in trust for a period of two years or until final liquidation of the assets of the Bank of Marion, with power in the trustees to vote such stock on any and all questions that might come before the stockholders of the Bank of Marion. It was provided that the stock be placed with the trustees for the purpose of securing the payment of any shortage growing out of the above-mentioned guaranty upon the part of the stockholders of the Marion Bank. It was further provided that the assets of the Bank of Marion be liquidated within two years from date of merger, but that the maker of any specified security might be indulged by accepting a renewal or by altering or increasing security thereon with the written approval of the chairman of the board of trustees for the stockholders. The trustees were authorized by the stockholders of the Bank of Marion to do any and all things necessary and proper to accomplish the merger and to act for and on behalf of the stockholders in all matters pertaining thereto.

By separate writing the trustees designated accepted the trust. At the end of the two-year period.

provided in the agreement, the assets of the Bank of Marion had not been fully liquidated, and thereupon the trustees, for the stockholders, agreed in writing that this period be extended for an additional two years or until final liquidation of the assets; it being stated in the agreement that such extension was necessary for the benefit of the stockholders. It is further alleged that after the consolidation or merger had been effected and the assets of the Marion Bank had been turned over to appellant, it was determined that the liabilities of the Marion Bank amounted to the sum of $593,407.75; that the assets taken over by appellant amounted in value to the sum of $527,415.21; that the liabilities exceeded the assets in the sum of $65,992.54; that appellant still has on hand, as assets turned over to it by the Bank of Marion, bonds and securities of a face value of $118,600, promissory notes of a face value of $14,334.21, and notes renewed at the request of and by written consent of the board of trustees in the sum of $16,200.74. Each of the bonds, securities, and notes remaining unliquidated is listed and described in the petition, and it is alleged that they are worthless; that appellant has taken all steps and has used due diligence in keeping with banking principles to liquidate the assets and to collect or make sale of all bonds and to liquidate the notes; that suits have been filed where it was thought there was a possibility of collection, such suits being filed by J. W. Blue, chairman of the board of trustees, for the stockholders, who with the board of trustees co-operated with appellant in the liquidation of the assets; that judgments have been recovered in suits filed and executions issued which were returned ''no property found''; that the board of trustees have endeavored to find market and make disposition of unliquidated assets and endeavored to collect and have deposited all bonds uncollected where bondholders' committees have been formed for the benefit of protecting the bondholders with such committees, but it has developed that no assets were available to liquidate such bonds; that it has performed in full and in detail all the duties, requirements, or obligations imposed upon or required of it under the merger agreement, and has assumed and paid all the debts and obligations of the Bank of Marion, such debts exceeding the assets in the sum of $65,599.54. The unliquidated securities, other

than the promissory notes listed in the petition as amended, and with the exception of the Illinois-Kentucky bridge bonds of a par value of $2,000 and the Midwest State Utilities Corporation of a par value of $5,000, are real estate mortgage bonds on apartment houses and other buildings in Chicago and other cities.

In sustaining the demurrer to the petition as amended, the chancellor rendered a memorandum opinion which is found in the record. After quoting from that portion of the contract appointing the trustees for the stockholders of the Bank of Marion and prescribing their powers and duties, the chancellor said in effect that any authority exercised, or attempted to be exercised, by the trustees as agents and attorneys in fact in excess of the powers conferred by the agreement, would not be binding on the stockholders of the Bank of Marion. From this and what followed, we infer that the chancellor had in mind that the trustees were without authority to extend the period for liquidation as provided in the agreement. It is stated in the opinion that it is conceded that the duties confided to and undertaken by appellant when the merger became effective on October 11, 1930, operated to make the trustees the liquidating agents of all parties concerned, and the chancellor concluded that

"from that time it owed to the stockholders of each of the merged banks, vigilance and legal action to protect the assets of the Marion bank from deteriorating in value, by decline of market prices, depression of times, or otherwise, and it should have within a reasonable time prosecuted all parties, claims, accounts, bonds and other evidences of indebtedness to insolvency, as tested by judgment and execution, which would fix in the legal way all values and would have resulted either in collection or a return of 'no property found.' "

Further on in the opinion it is said:

"It would not do at this late date, about four years after merger, or at any other time, beyond the first available term of the court having jurisdiction of the various parties and obligations to allow plaintiff to take advantage of its own inactivity and failure to make the legal test of every asset confided to it by branding the parties 'insolvent,'

and the securities of 'no value.' In the absence of the yard stick of legal measurement, these statements become but conclusions of the pleader, especially would this be void of equity in the face of plaintiff's allegation that some of the bonds have some value. For instance, an estimated value of $800 is placed on the $2000 bonds of Illinois-Kentucky bridge, and further plaintiff alleges that it has a lien upon those assets termed 'worthless' by it, and asks a sale of same, and application of the proceeds thereof to its claim sued on.''

The chancellor sums up with the conclusion that the stockholders of the Bank of Marion are entitled to have the value of the unliquidated securities fixed by judgment and execution or some legal determination, before being required to respond in ''damages or debt.''

As recognized by the chancellor in determining the sufficiency of the petition on demurrer, its allegations must be taken as true. With the exception of the Illinois-Kentucky bridge bonds of a par value of $2,000 which appellant in its petition estimates to be of a value of $800, it is alleged that all the unliquidated notes and securities are worthless and that appellant with the assistance of the trustees for the stockholders has been unable to sell or collect or in any way realize anything from them. If this be true, which must be admitted in determining the sufficiency of the petition, it would be a useless gesture and an unwarranted expenditure and dissipation of the bank's funds in attorneys' fees and costs in reducing them to judgment and in securing an execution and return of ''no property found.'' Such procedure would result in loss to appellees as well as to the other stockholders. If in fact any of the securities have a value, appellees will not be prejudiced by granting to appellant the relief sought, since the court may make such orders with respect to the disposition and sale of them as will fully protect appellees. No doubt a sale of the Illinois-Kentucky bridge bonds for $800, the estimated value fixed in the petition, and the other securities at such price as might be obtained for them, would subject appellant to the charge of sacrificing such assets. If appellant has been remiss in duty, as might be inferred from the chancellor's opinion, that would be a matter of defense

which could not be considered in determining the sufficiency of the petition which alleges otherwise.

It is our conclusion that the petition as amended states a cause of action, and the court therefore erred in sustaining the demurrer thereto.

Wherefore the judgment is reversed for proceedings in conformity with this opinion.